UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID CEPEDA

                    Petitioner,              19 cv 2444 (JGK)

         - against -                         MEMOANDUM OPINION AND
                                             ORDER
ROBERT MORTON, JR.

                    Respondent.

---

JOHN G. KOELTL, District Judge:

    David Cepeda brings this pro se petition for Habeas Corpus
pursuant to 28 U.S.C. § 2254. Mr. Cepeda was convicted in the
New York State Supreme Court, New York County, of first-degree
burglary, first-degree robbery, and second-degree robbery, and
sentenced to an aggregate term of 15 years in prison plus 5
years of post-release supervision. After exhausting state
remedies, Mr. Cepeda brings this petition, arguing that: (1) his
Fourth Amendment rights were violated and he was not given a
full and fair opportunity to litigate his Fourth Amendment
claims; (2) the evidence adduced at trial was legally
insufficient to support his conviction; (3) a handgun should not
have been entered into evidence at trial; and (4) his Sixth
Amendment rights under the Confrontation Clause were violated.
For the reasons explained below, Mr. Cepeda's petition is
dismissed.

## I.   BACKGROUND

### A.  The Arrest

Mr. Cepeda was arrested in the early morning of November 10, 2013. Police officers responded to emergency calls of a burglary in progress and several officers chased the suspects. Tr. at 1219-1228.[1] Officers saw at least three individuals matching the physical descriptions reported from the emergency calls flee on foot from the scene of the reported burglary. See id. at 83, 166-67, 1219-20, 1280-83. In the course of the chase, co-defendants Pandiello and Arias were arrested. See S.H. at 23-27; Tr. at 434-35. From Arias, officers recovered two iPhones, including one belonging to one of the victims, a butter knife, a screwdriver, money, and two gloves. Tr. at 746-48, 791-92, 809, 1109. Law enforcement officers later identified a bootprint in the victims' apartment as the same size and sole design of Arias's boot. Id. at 1082, 1088, 1091.

The chase led Detective Monterrosa and Lieutenant Zonneveld to the dumpster area of a nearby building. Id. at 1237-38. At that point, Detective Monterrosa noticed a cellphone on the ground near the dumpster and heard a noise coming from inside the dumpster. Id. at 1238-39, 1326. Detective Monterrosa entered

---

[1] References to "Tr." refer to page numbers of the transcript of Mr. Cepeda's trial. References to "S.H." refer to the page numbers of the transcript of Mr. Cepeda's suppression hearing. References to "S.R." refer to page numbers of the State Record.

the dumpster, removed some trash, and saw Mr. Cepeda's legs. Id.
at 1246-48, 1326. Detective Monterrosa got out of the dumpster,
and then he and Lieutenant Zonneveld called the Emergency
Services Unit for assistance in getting Mr. Cepeda out of the
dumpster. See id. at 759-60.

After the Emergency Services Unit assisted in retrieving
Mr. Cepeda from the dumpster, Officer Merandy placed Mr. Cepeda
under arrest, handcuffed him, and escorted him to the back seat
of Officer Merandy's patrol car. Id. at 1131-32, 1270-71. While
in the patrol car, Mr. Cepeda asked Detective Monterrosa to
loosen his handcuffs. Id. at 1273. When Detective Monterrosa
approached Mr. Cepeda to loosen his handcuffs, Detective
Monterrosa received a radio broadcast from Lieutenant Zonneveld
that the suspects were armed. In response, Mr. Cepeda allegedly
said: "We had no guns. You guys check[ed] me. All I have is cell
phones. You guys got me already. . . . Take me back to the
precinct." Id. at 1270-74. The radio transmission from
Lieutenant Zonneveld occurred at 5:42 a.m. and Detective
Monterrosa testified that the 5:42 a.m. communication was the
first time he had heard that the suspects were armed. Id. at
1371; S.H. at 256.

After the arrests, the prosecution was able to connect the
co-defendants to each other through photos, text messages,

cell-site data, and voice-call data, and to the scene of the crime through cell-site data. See Tr. at 1608-23, 1825-29.

## B. Mr. Cepeda's Incriminating Statement

Mr. Cepeda moved to suppress his statement and physical evidence recovered from him as the fruit of an unlawful arrest. He argued that officers lacked probable cause to arrest him and that Detective Monterrosa fabricated the testimony about Mr. Cepeda's statement.

Detective Monterrosa testified at the suppression hearing that when he approached Mr. Cepeda to loosen the handcuffs, Lieutenant Zonneveld radioed about the suspects being armed, at which point Mr. Cepeda spontaneously made his statement. S.H. at 255-56, 277. Detective Monterrosa also testified that Lieutenant Zonneveld's 5:42 a.m. transmission was the first time he was notified that the suspects were armed. Id.

After cross-examining Detective Monterrosa, defense counsel sought to call Lieutenant Zonneveld and to recall Officer Merandy to establish that Detective Monterrosa fabricated his testimony regarding Mr. Cepeda's statement Id. at 258, 279-81. Defense counsel alleged that Detective Monterrosa's testimony was inconsistent with the recorded timeline and that testimony of Lieutenant Zonneveld and Officer Merandy could prove that theory. Id. The transmission about the suspects being armed occurred at 5:42 a.m. but the police reported that Mr. Cepeda

4

was taken into custody at 6:05 a.m., id. at 291-92, which
defense counsel argued proved that Mr. Cepeda could not have
been in the patrol car during the broadcast that allegedly
prompted Mr. Cepeda's spontaneous statement. Id. at 279-81. The
trial court stated that, since no one else was alleged to have
heard the statement, no other witness would have relevant
testimony. Id. at 279-86.

Defense counsel renewed the argument that the timeline
presented was implausible, arguing:

> [T]his is about whether [Detective Monterrosa is]
> lying about hearing a statement. That is what it's
> about, whether he lied and made it up. He said the
> lieutenant makes [the radio transmission] at a time
> prior to my client being arrested . . . . The question
> is is he making it up, that he never heard it. Because
> the lieutenant's broadcast came 20 minutes before he
> was with my client. Id. at 281-82.

In further support of defense counsel's argument that
Detective Monterrosa fabricated his testimony, defense counsel
noted that there was a radio call about the presence of guns
before the Emergency Services Unit arrived to assist in Mr.
Cepeda's arrest, which conflicts with Detective Monterrosa's
testimony that the 5:42 a.m. transmission was the first time
Detective Monterrosa was notified about the presence of guns.
Id. at 294-95. Defense counsel also sought to admit the sprint
report into evidence to undermine further Detective Monterrosa's
testimony because the sprint report allegedly supported defense

counsel's alleged timeline of events.[2] Id. at 285-86. The
prosecution argued that the sprint report did not contain all
information broadcast via the police communications and that the
time that the police reported that Mr. Cepeda was in custody, at
6:05 a.m., was recorded after events calmed down, not at the
actual moment Mr. Cepeda was taken into custody. Id. at 289-91.

The trial court said that the defendant was free to argue
that Detective Monterrosa fabricated his testimony but denied
Mr. Cepeda's request to call Lieutenant Zonneveld and to recall
Officer Merandy. Id. at 283-86. The trial court also denied Mr.
Cepeda's request to enter the sprint report into evidence. Id.
at 285-86.

In a letter dated June 4, 2015, Mr. Cepeda moved the court
to declare a mis-hearing, or in the alternative, to reopen the
hearing to allow the defense to call Lieutenant Zonneveld and to
recall Officer Merandy. S.R. at 178-82. Notwithstanding the
letter, the trial court denied the suppression motion in a
written decision and made findings of fact consistent with
Detective Monterrosa's testimony. Id. at 183-97. The trial court
held that the police had probable cause to arrest Mr. Cepeda and
lawfully searched him incident to his arrest. Id. at 193-95. The

---

[2] A sprint report is a report prepared by a police dispatcher who
records certain information from police radio communications. S.H. at 290.

trial court also found "no inconsistency between Det. Monterrosa's testimony and that of the other witnesses and the exhibits" because Mr. Cepeda could have been detained before the time officially marking when he was in custody. Id. at 196. The trial court concluded that Mr. Cepeda made his statement spontaneously and therefore it was admissible. Id.

### C. Cross-Examination of Officer Goldner

Officer Goldner, who was one of the police officers at the scene of the defendants' arrests, testified at Mr. Cepeda's trial. Before Officer Goldner testified at trial, the prosecution disclosed that Officer Goldner settled a civil lawsuit against him for false arrest. Tr. at 491-92. Defense counsel alleged that the suit involved Officer Goldner's false arrest of a plaintiff for political reasons, based on the plaintiff's participation in the Occupy Wall Street movement, and that Officer Goldner "swore to a complaint which he lied to[.]" Tr. at 494-95. The prosecution noted that, in the settlement agreement, there was no finding of guilt. Id. at 491-92.

To impugn his credibility, defense counsel sought to ask Officer Goldner on cross-examination if he recently had been sued for false arrest and whether the case settled for $25,000. Id. at 493. The trial court did not permit any inquiry into the existence of the civil lawsuit or the underlying facts. Id. 545-

46. The trial court found that there was "insufficient predicate for any prevarication" because the complaint at issue in the civil suit was a third-party complaint "based upon information and belief." Id. at 545, 547.

### D. Admission of the Gun

On the evening of November 10, 2013, the police received an anonymous tip about a gun on the roof of a building across the street from the crime scene. Id. at 661-63. The police recovered a black handgun with a silver top. Id. at 664-68. Eyewitness testimony suggested that the gun used in the robbery was black with a silver top. Id. at 291-93. Outside the building where the gun was found, the police recovered a pair of gloves with Franklyn Ramos's DNA on it. Id. at 1468, 1492, 1661-62. Mr. Ramos was not charged in Mr. Cepeda's case, but cell phone data indicated that Mr. Ramos had called the phone recovered from Mr. Cepeda several hours before the robbery. See id. at 1608-23. The trial court concluded, and the Appellate Division affirmed, that the gun was relevant to establish Mr. Cepeda's guilt because it matched the description of the gun used during the robbery, it was recovered about 13 hours after the robbery, it was found near the crime scene, and the circumstances suggested that one of the perpetrators could have left the gun on the roof. S.R. at 365.

### E. Conviction and Appeal

After a jury trial, Mr. Cepeda was convicted of first-degree burglary, first-degree robbery, and second-degree burglary. Id. at 15. He was sentenced to 15 years in prison plus 5 years of post-release supervision, with a concurrent sentence of 8 years in prison with 5 years of post-release supervision. Id. On direct appeal, Mr. Cepeda argued that the police lacked probable cause to arrest him, the firearm should not have been admitted into evidence, that his Sixth Amendment right under the Confrontation Clause was violated, and that the verdict was against the weight of the evidence. Id. at 220-78. The Appellate Division affirmed the conviction and found Mr. Cepeda's arguments to be without merit. People v. Cepeda, 70 N.Y.S.3d 492 (App. Div. 2018); S.R. at 364-66. The Court of Appeals denied Mr. Cepeda's application for review. People v. Cepeda, 103 N.E.3d 1248 (N.Y. 2018); S.R. at 377.

Mr. Cepeda now brings this petition for Habeas Corpus under 28 U.S.C. § 2254 in which he alleges that: (1) he was not given a full and fair opportunity to make his Fourth Amendment claims because the trial court would not let him call Lieutenant Zonneveld and recall Officer Merandy in the suppression hearing; (2) the evidence presented at trial was legally insufficient to support his conviction; (3) the gun should not have been entered

into evidence; and (4) his Sixth Amendment right under the
Confrontation Clause was violated because the trial court did
not let him cross-examine Officer Goldner about the facts of the
false arrest lawsuit.

**II.**

Pursuant to the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), a federal court may grant habeas corpus
relief to a state prisoner on a claim that was adjudicated on
the merits in state court only if it concludes that the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or "was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C.
§ 2254(d)(1)-(2); see also Washington v. Griffin, 876 F.3d 395,
403 (2d Cir. 2017).[3]

A state court decision is contrary to clearly established
federal law "if the state court arrives at a conclusion opposite
to that reached by [the Supreme Court] on a question of law" or
"if the state court confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all
alterations, citations, footnotes, and internal quotation marks in quoted
text.

arrives at a result opposite to" the Supreme Court's conclusion. Williams v. Taylor, 529 U.S. 362, 405 (2000); see Washington, 876 F.3d at 403.

A state court decision involves an unreasonable application of clearly established federal law when "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685 (2002); see also Washington, 876 F.3d at 403. To meet that standard, the state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011); see also Washington, 876 F.3d at 403. "[I]t is well-established in [this] circuit that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003).

### III.

### A. Mr. Cepeda's Fourth Amendment Claim

Mr. Cepeda argues that his Fourth Amendment rights were violated by the admission of his statement and physical evidence seized from him as the fruit of an arrest lacking probable cause, and that he did not have a full and fair opportunity to

litigate that issue. "[W]here the state has provided an
opportunity for full and fair litigation of a Fourth Amendment
claim, the Constitution does not require that a state prisoner
be granted federal habeas corpus relief on the ground that
evidence obtained in an unconstitutional search or seizure was
introduced at his trial." Stone v. Powell, 428 U.S. 465, 482,
(1976); see also Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991);
Canteen v. Smith, 555 F. Supp. 2d 407, 416 (S.D.N.Y. 2008).
Therefore, in order to grant the petition, the petitioner must
show that he was not given a full and fair opportunity to
litigate because the state failed to provide "corrective
procedures" by which his claim could be adjudicated, or that he
was unable to avail himself of the state's procedures "because
of an unconscionable breakdown in the underlying process."
Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).[4] If a state
"provides no procedure for defendants to redress Fourth
Amendment violations, federal habeas corpus remains available."
Shaw v. Scully, 654 F. Supp. 859, 863 (S.D.N.Y. 1987). But, if
"the state by enacting a statutory mechanism for the suppression
of evidence obtained by unlawful search and seizure, has

---

[4] While Capellan was decided before AEDPA was enacted, its holding continues
to apply after the passage of AEDPA. See, e.g., Sing v. Miller, 104 F. App'x
770, 772 (2d Cir. 2004); Branch v. McClellan, 234 F.3d 1261, 1261 (2d Cir.
2000); Henriquez v. LaClair, No. 19-cv-2265, 2020 WL 1233633, at *2 (S.D.N.Y.
Mar. 12, 2020).

provided an opportunity fully and fairly to litigate Fourth Amendment issues, the federal courts may not reexamine those issues on habeas corpus review." Id. (citing McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983)). New York "provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial" through a suppression hearing under N.Y. Crim. Proc. Law § 710.30. Shaw, 654 F. Supp. at 864. Therefore, Mr. Cepeda must allege that there was an "unconscionable breakdown" in the underlying process.

Mr. Cepeda alleges that he was not given a full and fair opportunity to litigate his Fourth Amendment claims because the trial court did not let defense counsel call Lieutenant Zonneveld or recall Officer Merandy during Mr. Cepeda's suppression hearing. Mr. Cepeda argued at the suppression hearing that his statements and the physical evidence recovered from his person were the fruit of an unlawful arrest because the arresting officer did not have probable cause to arrest him and that Detective Monterrosa fabricated his testimony concerning Mr. Cepeda's statement. Defense counsel alleged that the events could not have happened the way Detective Monterrosa described because Mr. Cepeda's recorded arrest time was after the time at which Detective Monterrosa testified that he heard Mr. Cepeda make incriminating statements. The trial court told defense

counsel that the defendant could make that argument, but that the defendant could not call Lieutenant Zonneveld or recall Officer Merandy at the suppression hearing. Mr. Cepeda also sought to have the sprint report entered into evidence, which he claimed supported his allegation that Detective Monterrosa fabricated his testimony. The trial court did not enter the sprint report into evidence. Mr. Cepeda asserts that the trial court's decisions (1) to prohibit Mr. Cepeda from calling Lieutenant Zonneveld and recalling Officer Merandy, and (2) not to enter the sprint report into evidence deprived Mr. Cepeda of a full and fair opportunity to litigate his Fourth Amendment claims.

In deciding this petition, this Court does not inquire into the correctness of the trial court's decisions to prohibit Mr. Cepeda from calling Lieutenant Zonneveld and recalling Officer Merandy or denying admission of the sprint report into evidence. Capellan, 975 F.2d at 71 (The "unconscionable breakdown" inquiry focuses on "the existence and application of the corrective procedures themselves," not "the correctness of the outcome resulting from the application of adequate state court corrective procedures."). Rather, the inquiry is whether Mr. Cepeda was given a full and fair opportunity to litigate his Fourth Amendment claim. Stone, 428 U.S. at 482; see also Capellan, 975 F.2d at 71. Because New York provides corrective

procedures for litigating Fourth Amendment claims, Capellan, 975 F.2d at 70 n.1, Mr. Cepeda must show that there was an unconscionable breakdown in the underlying process.

An unconscionable breakdown in the underlying process occurs when "the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law." Id. at 70. Habeas review is precluded where the state proceedings had "a corrective appellate or collateral procedure that fairly determined that constitutional violations did not occur." Id. Examples of unconscionable breakdowns in the underlying procedure include, but are not limited to, "the bribing of a trial judge, the government's knowing use of perjured testimony, or the use of torture to extract a guilty plea, all without opportunity to obtain state review." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam).

Contrary to Mr. Cepeda's assertions, Mr. Cepeda had a full and fair opportunity to litigate this issue. The trial court heard Mr. Cepeda's arguments, both in the suppression hearing and in the post-hearing letter. And even if the trial court erred in its determinations, Mr. Cepeda had a full and fair opportunity to raise those issues on appeal. See Capellan, 975 F.2d at 70. Moreover, further undermining his argument that he was denied a full and fair opportunity to litigate his Fourth

Amendment arguments, Mr. Cepeda never raised on appeal the issue of the trial court's determination to preclude the witnesses' testimony at the suppression hearing. The Appellate Division considered the Fourth Amendment claims that Mr. Cepeda did raise and rejected them in a written opinion, Cepeda, 70 N.Y.S.3d at 493, and the Court of Appeals denied him leave to appeal. Cepeda, 103 N.E.3d 1248. Accordingly, there was no "unconscionable breakdown in the underlying process," Capellan, 975 F.2d at 70, that denied Mr. Cepeda an opportunity to fully and fairly litigate his Fourth Amendment claims.

## B. Sufficiency of the Evidence

Mr. Cepeda alleges that his conviction was against the weight of the evidence.[5] A state court's factual findings are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). The petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights

---

[5] While the petitioner characterizes his claim as an argument that his conviction was against the weight of the evidence, that argument does not raise a constitutional claim. See McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011); Hernandez v. Conway, 485 F. Supp. 2d 266, 274-75 (W.D.N.Y. 2007) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review."). Therefore, the Court construes the petitioner's claim as an argument that the evidence was insufficient for a reasonable jury to conclude beyond a reasonable doubt that he was guilty. See Jackson v. Virginia, 443 U.S. 307, 324 (1979); McKinnon, 422 F. App'x at 75; Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007).

have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

When considering insufficiency of the evidence claims, courts are required to consider the trial evidence in the light most favorable to the state and uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)). The petitioner's claim "face[s] a high bar," and the state court decision may only be overturned if it was "'objectively unreasonable.'" Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).

Therefore, courts must use a "doubly deferential standard of review" when considering a petitioner's sufficiency challenge, deferring first to the jury's verdict, and second to the state court's determination under the standard set forth in 28 U.S.C. § 2254(d). Garbutt v. Conway, 668 F.3d 79, 81 (2d Cir. 2012) (per curiam). Thus, where a state court has denied a claim of insufficient evidence on the merits, habeas corpus should not be granted unless "no reasonable court could have held that any

reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." Id. at 82.

In this case, the Appellate Division found that evidence of Mr. Cepeda's guilt was "overwhelming." Cepeda, 70 N.Y.S.3d at 493; S.R. at 365. The victims testified about the manner of the crime, and other eyewitnesses gave a description that matched Mr. Cepeda. Mr. Cepeda acknowledged his participation in the crime in his spontaneous statement to Detective Monterrosa. The testimony of the police witnesses further corroborated Mr. Cepeda's guilt. Detective Monterrosa testified that he saw three people flee the crime scene. The police found two of those suspects, who were Mr. Cepeda's co-defendants, and then they found Mr. Cepeda hiding in a dumpster in the direction where his co-defendants were fleeing. A reasonable jury could conclude that Mr. Cepeda was acting in concert with the other two individuals who were fleeing, and that his hiding in a dumpster further demonstrates his consciousness of guilt. Moreover, cell-site and voice-call data placed Mr. Cepeda and his co-defendants at one of the co-defendant's apartment hours before the crime, and placed all three at or near the apartment where and when the crime occurred. Arias, one of the co-defendants, was arrested with an iPhone belonging to one of the victims in his pocket, and a bootprint matching Arias's boot was found in the victims' apartment. The jury also heard and saw evidence further

connecting the three co-defendants, including photos and calls establishing that they had a pre-existing relationship and had been together and in contact shortly before the crime. Based on this evidence, a reasonable jury could conclude that Mr. Cepeda was guilty of first-degree burglary, first degree-robbery, and second-degree robbery. Accordingly, under the doubly deferential standard of review, there is no basis to conclude that "no reasonable court could have held that any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." Garbutt, 668 F.3d at 82.

## C. Admission of the Gun into Evidence

Mr. Cepeda asserts that the trial court erred in admitting the firearm into evidence at his trial. The role of federal courts reviewing habeas petitions is not to reexamine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims, and habeas petitions may not repackage state law claims, which have previously been found to be meritless, in order to obtain review. See DiGuglielmo v. Smith, 366 F.3d 130, 136-37 (2d Cir. 2004).

"Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." McCray v. Artuz, 93-cv-5757, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994). A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial. See Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985). Generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation entitling the petitioner to habeas relief. See Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995), aff'd, 71 F.3d 406 (2d Cir. 1995); see also Estelle, 502 U.S. at 67-68; Israel v. New York, No. 16-cv-8541, 2020 WL 3643046, at *15 (S.D.N.Y. Feb. 4, 2020), report and recommendation adopted, 2020 WL 3640012 (S.D.N.Y. July 6, 2020). To succeed on a habeas claim challenging an evidentiary ruling, a petitioner must demonstrate that the alleged evidentiary error violated an identifiable constitutional right. Roberts, 875 F. Supp. at 189. Moreover, a constitutional violation sufficient for habeas relief arises only when the petitioner can establish that the error had a "substantial and injurious effect or

influence in determining the jury's verdict." <u>Brecht v.
Abrahamson</u>, 507 U.S. 619, 637–38 (1993); <u>see also</u> <u>Fry v. Pliler</u>,
551 U.S. 112, 121–22 (2007).

Mr. Cepeda challenges the trial court's admission of a gun
into evidence on relevancy grounds. New York law provides that
evidence is relevant if it has "any tendency in reason to prove
any material fact," <u>People v. Alvino</u>, 519 N.E.2d 808, 812 (N.Y.
1987); <u>see also</u> N.Y. Evid. R. 4.01(1). "Relevant evidence may
still be excluded in the exercise of the trial court's
discretion if its probative value is substantially outweighed by
the potential for prejudice." <u>People v. Frumusa</u>, 79 N.E.3d 495,
501 (N.Y. 2017); <u>see also</u> N.Y. Evid. R. 4.07. The test for the
relevance of physical evidence is "an evaluation of how
close . . . the connection [is] between the object and the
defendant. If it is not so tenuous as to be improbable, it is
admissible as is any other evidence which is relevant to an
issue in the prosecution." <u>People v. Mirenda</u>, 245 N.E.2d 194,
201 (N.Y. 1969). To be admissible, the connection between the
physical item and the defendant need not rely upon "a showing
that the evidence adduced permits only one inference." <u>Id.</u>

Mr. Cepeda cannot show that the decision to admit the gun
was such an abuse of discretion as to deprive him of a
fundamentally fair trial. The trial court found that the gun was
relevant and that there was a sufficient connection between Mr.

Cepeda and the gun because the gun matched the description of
the gun used during the robbery, it was found within a temporal
and spatial proximity to the crime, gloves with Mr. Ramos's DNA
were found outside the building where the gun was found, and
surrounding circumstances suggested that one of the perpetrators
left the gun on the roof. Both victims testified that the gun
was dark with a silver top, which matched the description of the
gun admitted into evidence. In addition to the testimony and its
temporal and spatial proximity to the crime scene, gloves
containing Mr. Ramos's DNA was recovered in front of the
building where the gun was recovered. While Mr. Ramos was not
charged for the robbery, cellphone data established a connection
between Mr. Ramos and the defendants.

Mr. Cepeda had an opportunity to argue to the jury that
there was only a tenuous connection between the gun and the
crime so that the jury could appropriately discount its
probative value in issuing its verdict. Moreover, due to the
large body of evidence against him, Mr. Cepeda failed to show
that the jury's decision to convict turned on the admission of
the gun. Accordingly, admission of the gun did not deprive Mr.
Cepeda of a fundamentally fair trial, and habeas relief
therefore is inappropriate on the basis of the admission of the
gun.

### D. Mr. Cepeda's Sixth Amendment Claim

Mr. Cepeda claims that his Sixth Amendment right to Confrontation was violated when the trial court precluded cross-examination of Officer Goldner regarding the settlement of a civil lawsuit alleging false arrest. While the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant "a meaningful opportunity to cross-examine witnesses against him," Alvarez v. Ercole, 763 F.3d 223, 229-30 (2d Cir. 2014), trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). To grant a petition for habeas corpus, a court "would have to conclude not only that the trial court abused its broad discretion by precluding cross-examination . . . but also that the [state appellate court] could not reasonably have determined that the [evidence] would have been excludable had the trial court properly applied standard rules of evidence." Alvarez, 763 F.3d at 230 (alterations in original); Foster v. Warden, Five Points Corr. Facility, No. 17-cv-5695, 2019 WL 4918102, at *18-19 (E.D.N.Y. Sept. 30, 2019), appeal dismissed, 2019 WL 7592238 (2d Cir. 2019); Borukhova v. Warden, Bedford Hills Corr.

Facility, No. 14-cv-4738, 2015 WL 5307725, at *14 (E.D.N.Y.
Sept. 10, 2015). In addition, the preclusion of the cross-
examination "must not have been harmless, that is, it must have
had a substantial and injurious effect or influence in
determining the jury's verdict." Alvarez, 763 F.3d at 230.

In this case, defense counsel sought to ask Officer Goldner
if he had been sued for false arrest and whether the case
settled for $25,000. The prosecutor represented that the case
settled for a "fairly low dollar amount," and that there was no
finding of guilt or wrongdoing. Tr. at 492. Defense counsel
alleged that Officer Goldner falsely arrested the plaintiff in
the civil case because the plaintiff was affiliated with the
Occupy Wall Street movement and Officer Goldner "swore to a
complaint which he lied to[.]" Id. at 494-95. The trial court
ultimately prohibited any inquiry into the civil lawsuit. The
trial court found that the prior civil lawsuit and underlying
facts did not tend to impugn the credibility or veracity of
Officer Goldner and that Officer Goldner authored the criminal
complaint at issue in the prior action "on information and
belief" based on information received from a fellow officer. Id.
at 545; 70 N.Y.S.2d at 493-94.

Mr. Cepeda has failed to show that the trial court abused
its wide discretion in limiting cross-examination of Officer
Goldner. In addition, Mr. Cepeda cannot show that exclusion of

the cross-examination had "a substantial and injurious effect or influence in determining the jury's verdict." Alvarez, 763 F.3d at 230; see also Fry v. Pliler, 551 U.S. at 121-22; Brecht, 507 U.S. at 637-38; Corby v. Artus, 699 F.3d 159, 169 (2d Cir. 2012); Foster, 2019 WL 4918102, at *19; Borukhova, 2015 WL 5307725, at *14. Officer Goldner was not the only officer to testify, and beyond Officer Goldner's testimony, the prosecution presented other persuasive evidence of the petitioner's guilt. Given the large body of evidence against the petitioner at his trial, Mr. Cepeda cannot show that the preclusion of the cross-examination of Officer Goldner had a substantial and injurious effect on the verdict. See, e.g., Benn v. Greiner, 402 F.3d 100, 105-07 (2d Cir. 2005) (Sotomayor, J.); McGhee v. Uhler, No. 17-cv-1103, 2019 WL 4228352, at *9 (S.D.N.Y. Apr. 18, 2019), report and recommendation adopted, 2019 WL 3852514 (S.D.N.Y. 2019); Borukhova, 2015 WL 5307725, at *14. Moreover, Mr. Cepeda presented his Confrontation Clause argument to the Appellate Division, which found the argument to be without merit. Mr. Cepeda has failed to show that the Appellate Division could not have reasonably reached that conclusion. See Alvarez, 763 F.3d at 230.

Accordingly, habeas relief is inappropriate on Mr. Cepeda's Confrontation Clause claim.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the petition for a writ of habeas corpus is **dismissed.** The Clerk is directed to enter judgment dismissing the petition. The Clerk also is directed to close this case.

Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED.**

Dated:     **New York, New York**
           **October 30, 2020**

                                    **John G. Koeltl**
                            **United States District Judge**